**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| BOPHANY CHHAY, ) | |
| ) | CASE NO. 1:13-cv-02229 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Bophany Chhay ("Chhay ") challenges the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying Chhay's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I. Procedural History**

On April 5, 2010, Chhay filed an application for POD and DIB alleging a disability onset date of October 1, 2009. (Tr. 10.) Her application was denied both initially and upon

reconsideration. Chhay timely requested an administrative hearing. *Id*.

On December 19, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Chhay, represented by counsel, an impartial medical expert ("ME"), and an impartial vocational expert ("VE") testified. (Tr. 10.) On May 23, 2012, the ALJ found Chhay was able to perform her past relevant work and, therefore, was not disabled. (Tr. 21-23.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Born in 1964 according to official records, Chhay was age forty-seven (47) at the time of her administrative hearing and forty-five (45) on her alleged onset date. (Tr. 35-36.) As such, she is a "younger" person under social security regulations.[1] *See* 20 C.F.R. § 404.1563(c). Chhay completed the Sixth Grade in Cambodia. (Tr. 37.) She understands some basic English. (Tr. 31.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[1] At the hearing, Chhay alleged that she was actually born in 1960. (Tr. 35.)

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Chhay was insured on her alleged disability onset date, October 1, 2009, and remained insured through the date of the ALJ's decision, May 23, 2012. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Chhay must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Chhay established medically determinable, severe impairments, due to degenerative disc disease of the cervical spine, lumbar spine strain and/or strain, tendinosis and partial thickness tear of the inferior aspect of the left shoulder, degenerative joint disease of the right shoulder, and degenerative joint disease of both knees. (Tr. 12-13.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13.) Chhay was found capable of performing her past relevant work as an inspector, and was determined to have a Residual Functional Capacity ("RFC") for a

---

ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

limited range of sedentary work. (Tr. 15-16, 21.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Chhay was not disabled. (Tr. 22-23.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing*

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

*Treating Physician*

Chhay argues that the ALJ erred by failing to give good reasons for rejecting the opinion of one of her treating physicians, Naryana Dasari, M.D.  (ECF No. 13 at 9-13.)  The

5

Commissioner argues that substantial evidence supports the weight the ALJ ascribed to Dr. Dasari's opinions. (ECF No. 16 at 16-19.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting

---

[3] Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or

7

'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

There appears to be no dispute that Dr. Dasari qualified as a "treating physician" under the regulations, as the ALJ expressly refers to Dr. Dasari as a treating source. (Tr. 19.) On December 19, 2011, Dr. Dasari completed a "Physical Capacities Evaluation." (Tr. 454.) Therein, Dr. Dasari opined that Chhay could lift 10 pounds occasionally and 5 pounds frequently, sit for three hours and stand/walk for two hours in an eight hour workday. (Tr. 454.) There was no finding for the need of an assistive device for ambulation. *Id*. Dr. Dasari did find that Chhay could rarely bend or stoop, reach (including overhead), or work with or around dangerous machinery. *Id*. Dr. Dasari also offered that Chhay would be absent more than four days per month as a result of her impairments and treatment. *Id*. Dr. Dasari explained that the limitations were based on Chhay's chronic back pain (upper and lower), shoulder pain, impaired mobility, and limited use of her upper extremities. *Id*.

It is not altogether clear from Chhay's brief which portions of Dr. Dasari's opinion she believes the ALJ improperly rejected.[4] The ALJ stated that he "gave weight to Dr. Dasari's opinions about Ms. Chhay's abilities to lift, carry, stand, walk, push, pull, and climb." (Tr. 19.) Chhay has not disputed the accuracy of this statement, and these limitations do not obviously

---

[4] The Court's review of this matter is rendered more difficult by Chhay's rather perfunctory description of the relevant medical evidence and inaccurate citations to the record. (ECF No. 13 at 7-8; *see, e.g.*, footnotes 16 to 20.)

conflict with sedentary work.[5]

With respect to the remainder of Dr. Dasari's December 2011 assessment, the ALJ found as follows:

> I gave no weight to any of Dr. Dasari's other opinions because they were supported only by Ms. Chhay's complaints of pain and were not supported by objective findings or other evidence in Dr. Dasari's own treatment notes, anyone else's treatment notes, or any other evidence in the record. There is evidence in the record that Ms. Chhay was and is able to complete activities of daily living and take classes. With respect to limitations on Ms. Chhay's abilities to do gross manipulation and fine manipulation, I found no evidence in the record that Dr. Dasari ever physically examined Ms. Chhay's upper extremities to ascertain whether she was positive or negative for Tinel's sign or Phalen's sign. Other evidence and points discussed above helped persuade me that Ms. Chhay could sit for more than 3 hours total out of an 8-hour workday, and that she would not be excessively absent from work or off-task while at work provided that her work was done in compliance with the residual functional capacity stated above in the first paragraph of this Finding #5.

(Tr. 19.)

The two rejected opinions of Dr. Dasari that clearly conflict with the RFC are the limitation to only three hours of sitting in an eight-hour workday and the four or more days of absences per month. As such, the Court will address whether the ALJ gave good reasons for rejecting these two opinions. Earlier in the opinion, the ALJ found it significant that Chhay told a consultative examiner she could sit for two hours while taking classes, though she complained of pain in her tail bone after prolonged sitting. (Tr. 18.) The ALJ also noted that Chhay sat

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567; SSR 83-10, 1983 SSR LEXIS 30 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday ...")

9

through a ninety minute hearing with no apparent problem. *Id*. The ALJ further observed that Chhay presented at various examinations in no acute distress. (Tr. 19.) The ALJ emphasized that Dr. Dasari relied chiefly on Chhay's complaints (Tr. 19), and, later in the opinion, pointed out that Chhay had complained to a consultative examining physician that she had chronic pain on the whole left side of her body, including pain in her head split at the midline. (Tr. 20.) The consultative examiner stated that "midline split is classic for embellishment/symptom magnification vs. malingering." (Tr. 20, 369.)

Courts have held that "[w]hen a treating physician's opinion is based on a claimant's self reports which are themselves not credible, it is not error to assign little weight to the opinion." *Webb v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 4264, 2014 WL 129237 at * 6 (E.D. Tenn. Jan. 14, 2014) (*citing Vorholt v. Comm'r of Soc. Sec.*, 409 Fed App'x 883, 889 (6th Cir. 2011)). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (affirming ALJ's rejection of treating physician opinions where "[t]hese doctors formed their opinions solely from Smith's reporting of her symptoms and her conditions and the ALJ found that Smith was not credible"); *Stevenson v. Astrue*, 2010 U.S. Dist. LEXIS 78475, 2010 WL 3034018 at * 8 (M.D. Tenn. Aug. 3, 2010) (finding that a medical opinion "based on [an] incredible self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence").

The Court finds that the ALJ adequately explained why he rejected the sitting limitations contained in Dr. Dasari's opinion. He explained that this opinion was based solely on Chhay's subjective complaints, which he found were not credible based on other evidence in the record. (Tr. 16-21.) Notably, Chhay has not challenged the ALJ's credibility finding. In addition, the

ALJ also observed that neither Dr. Dasari's treatment notes nor those of any other physician supports such a sitting limitation. Chhay fails to point to any evidence of record suggesting that this interpretation of the medical records was incorrect. While it is not this Court's function to comb the record to find evidence to support Chhay's argument, the Court did review Dr. Dasari's treatment notes, and found no apparent complaints regarding her ability to sit or complaints of pain in her tail bone. (Tr. 399-431.) Rather, her complaints appear to focus primarily on her upper back, neck, and shoulder. *Id*.

Turning to Dr. Dasari's opinion that Chhay would miss four or more days of work per month, the Court is skeptical whether such an opinion truly constitutes a "medical opinion" under the facts and circumstances of this case. Dr. Dasari's assessment fails to explain in any meaningful manner why Chhay would miss so many days of work. (Tr. 454.) Dr. Dasari makes no mention of any treatment regimen, and it is not altogether clear why Chhay's chronic back and shoulder pain would cause her to miss work with such frequency. *Id*. Not all treating physician opinions are entitled to controlling weight and, therefore, subject to the "good reasons" requirement. Rather, an ALJ need only ascribe controlling weight to "medical opinions" from a treating source that are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the claimant's case record. SSR 96-2p, 1996 WL 374188 at * 2 (July 2, 1996). Pursuant to 20 CFR § 404.1527(a)(2), "medical opinions" are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

11

By contrast, the regulations provide that "medical source opinions" on issues reserved to the Commissioner are not entitled to controlling weight, even if they are rendered by a treating physician. Specifically, 20 CFR § 404.1527(d) provides that "opinions on some issues . . . are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." *See* 20 CFR § 404.1527(d). An ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 CFR § 404.1527(d)(3).

Interpreting these rules, some courts have found that treating physician opinions regarding predicted work absences do not constitute "medical opinions." *See e.g. Arnett v. Astrue*, 2008 WL 4747209 at * 5 (W.D. Ky. Oct. 17, 2008); *Hagan v. Colvin*, 2013 WL 3350838 at * 3 (W.D. Ky. July 3, 2013). The reasoning behind these decisions is that such opinions are essentially "tantamount to a finding of disability" in light of VE testimony that excessive work absences will preclude a hypothetical claimant from maintaining employment.[6] For example, in *Arnett*, the claimant argued that the ALJ was required to give controlling weight to the medical opinions of his treating physician, Dr. Turbo, that he is able to sit, stand, and walk for no more than two hours (total for each activity) during an eight hour workday and would require absences from work of four or more days per month. *Arnett*, 2008 WL 4747209 at * 5. In that case, the VE testified that such limitations would preclude any type of full-time employment. *Id.* The court

---

[6] Vocational experts routinely testify that such absenteeism would be unacceptable to employers and result in no competitively available jobs. *See e.g., St. Clair v. Astrue*, 2010 WL 3370568 at * 5 (N.D. Ohio Aug. 25, 2010); *Godec v. Astrue*, 2013 WL 1156506 (N.D. Ohio Jan. 30, 2013) *report and recommendation adopted* 2013 WL 1159034 (N.D. Ohio March 20, 2013); *Wilson v. Comm'r of Soc. Sec.*, 2010 WL 424969 at * 7 (N.D. Ohio Jan. 26, 2010).

rejected the claimant's argument, explaining as follows:

> 20 C.F.R. § 404.1527(e) provides that an opinion from medical sources that a claimant is "unable to work" full-time or any other opinion on an issue that is "dispositive of a case, i.e., that would direct the determination or decision of disability" is not deemed to be a "medical opinion" but rather a medical source opinion on an issue "reserved to the Commissioner" and, as such, is entitled to no "special significance." The magistrate judge concludes that the ALJ did not err in declining to give controlling weight to Dr. Turbo's per-se disabling opinions on issues "reserved to the Commissioner." The residual functional capacity (RFC) determination is expressly reserved for the Commissioner, and this is especially so when the RFC assigned by a medical source is tantamount to a finding of disability. See 20 C.F.R. §§ 404.1527(e)(2) and 404.1546. Such a determination is part of the disability evaluation. 20 C.F.R. § 404.1546. **Stated somewhat differently, Dr. Turnbo did not "know," in the sense of an objective medical fact, that, if properly motivated, the plaintiff would be incapable of sustaining alternate sitting/standing for an 8–hour workday and would require absences in excess of 4 days per month. Therefore, as a threshold matter, Dr. Turnbo's opinion was not a genuine "medical opinion."** We do not reach the issue of whether such an opinion was entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) because the regulation applies only to "medical opinions."

*Arnett*, 2008 WL 4747209 at * 5 (emphasis added). The court then affirmed the decision, implicitly finding the ALJ was not required to provide "good reasons" for rejecting the treating physician's opinion regarding predicted work absences. Under the circumstances presented herein, the Court finds that Dr. Dasari's opinion as to Chhay's predicted absenteeism does not constitute a medical opinion.[7]

On the other hand, some courts have presumed that such opinions do constitute "medical

---

[7] In some circumstances, the Court recognizes that an opinion regarding expected work absences may be more akin to a medical opinion than to an opinion as to a claimant's employability. Where, for example, due to the normal course of treatment, a patient has actually missed or is scheduled to miss a certain number of days, the physician's opinion is not the product of conjecture and is, rather, a *bona fide* medical opinion. However, Chhay has not directed this Court's attention to any record evidence indicating that this is such a case.

13

opinions" and that ALJs must, therefore, provide "good reasons" for rejecting them. *See e.g. Branson v. Astrue,* 2008 WL 111317 at * 4-5 (E.D. Tenn. Jan. 8, 2008) (vacating and remanding where ALJ failed to provide a valid basis for rejecting treating surgeon's opinion that claimant would be expected to have excessive work absences); *Horvath v. Comm'r of Soc. Sec.*, 2013 WL 1914359 at ** 11-12 (E.D. Mich. April 18, 2013) (vacating and remanding where substantial evidence did not support ALJ's stated reason for giving little weight to treating psychiatrist's opinion that claimant would be likely to be absent from work more than three times per month); *Stenberg v. Comm'r of Soc. Sec.*, 2008 WL 5268553 at * 1 (9th Cir. Dec. 16, 2008) (finding the ALJ properly rejected "medical opinions that Claimant would have two or more absences from work per month if employed" because decision provided "specific and legitimate reasons" supported by substantial evidence); *cf. Sharp v. Barnhart*, 152 Fed. App'x 503, 508 (6th Cir. 2005) (finding "[i]n the context of this case" and given the episodic nature of claimant's disease and frequent treatments, the ALJ failed adequately to explain why a treating source's opinion "should not be treated as a valid medical opinion regarding 'the frequency and duration of the disease's exacerbations' rather than an opinion 'on issues reserved to the Commissioner.'")

Nonetheless, even assuming *arguendo* that Dr. Dasari's opinion as to the frequency of Chhay's absences does constitute a medical opinion, the Court finds that ALJ gave good reasons for rejecting it. The ALJ explained he did not assign any weight to this opinion, because it was based almost solely on Chhay's self reported limitations. As stated above, it is not error to assign little weight to the opinion of a treating physician when it based on a claimant's self reports that are themselves not credible. In addition, Chhay does not identify any evidence of record that undermines the ALJ's finding that such absenteeism is simply not supported by the treatment

14

notes of any physician.

Based on the above, the Court finds the ALJ sufficiently articulated good reasons for rejecting Dr. Dasari's opinions regarding Chhay's predicted absenteeism and her sitting limitations. Accordingly, Chhay's argument that the ALJ violated the treating physician rule in his consideration of Dr. Dasari's opinions is without merit.

***Step Four***

At Step Four, the ALJ found that Chhay could perform only her past relevant inspector work as actually done but not as it is customarily performed in the national economy. (Tr. 21.)

Chhay asserts that the ALJ's finding was erroneous, because Chhay's employer basically granted her an accommodation by requiring her to lift and inspect only lighter parts in comparison to her co-workers.[8] (ECF No. 13 at 8.) As such, Chhay argues that the inspector job should not have been classified as past relevant work. Chhay fails to cite any applicable law or regulation that would render the ALJ's finding improper. It is not this Court's function to develop additional arguments on a plaintiff's behalf. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). As such, the Court deems this argument waived.

---

[8] According to Chhay's testimony, she performed her job as an inspector while sitting, as did others who performed the same job. (Tr. 41, 55-56.) She stated, however, that inspectors generally examined both "big parts" and "small parts," but she only had to examine the small ones. (Tr. 56.) Depending on the job, the "big parts" weighed somewhere between five to ten pounds. (Tr. 56-57.) It is unclear how much the "smaller parts" weighed.

The Commissioner, on the other hand, cites a decision where a similar argument was made. (ECF No. 16 at 14, *citing O'Neal v. Comm'r of Soc. Sec.*, 2013 WL 620377 (S.D. Ohio Feb. 19, 2013)). In *O'Neal*, as here, plaintiff argued that his floor scrubbing job did not qualify as past relevant work because he was only able to perform it with an accommodation. *Id*. at *7. The *O'Neal* court rejected the plaintiff's argument as he cited no authority supporting the proposition that where an employer makes an accommodation to do a job, it cannot be classified as past relevant work. *Id*. Furthermore, the *O'Neal* court observed that "the Sixth Circuit has held that the mere fact that an employer creates accommodations for an individual employee does not mean that the job is not past relevant work." *Id.*, *citing Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1031 (6th Cir. 1990).

In any event, the ALJ correctly identified 20 C.F.R. § 404.1573(c) as setting forth the factors to consider when work is performed under "special conditions."

> (c) If your work is done under special conditions. The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which--
>
> > (1) You required and received special assistance from other employees in performing your work;
> >
> > (2) You were allowed to work irregular hours or take frequent rest periods;
> >
> > (3) You were provided with special equipment or were assigned work

16

>>especially suited to your impairment;
>
>(4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>
>(5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>
>(6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

The ALJ stated ... "[g]iven the amount of time that Ms. Chhay spent doing this work, and the amount of pay that she received for doing it, I conclude that the work that she did while doing this job, even though 'under special conditions', showed that Ms. Chhay had 'the necessary skills and ability to work at the substantial gainful activity level'." (Tr. 22.) Chhay has failed to set forth a meaningful argument that the ALJ's determination was unreasonable, unsupported by substantial evidence, or contrary to law or any applicable regulation. Accordingly, Chhay's argument that her prior work as an inspector does not constitute past relevant work simply because her employer created reasonable accommodations is not well-taken.

In addition, Chhay argues that inspectors must lift at least frequently. (ECF No. 13 at 9.) She asserts that such frequency is inconsistent with ALJ's RFC determination. *Id.* However the RFC specifically included the ability to perform repetitive lifting of objects located above the waist level. (Tr. 16.) In the third hypothetical, which ultimately was adopted as the RFC, the ALJ asked the VE to assume someone with the following limitations: an individual who was educated in Cambodia and whose education did not reach the high school level; past relevant work same as Chhay's; sedentary exertional work with all that implies with respect to exertional

17

and postural limitations subject to the following addition limitations; **the ability to perform repetitive lifting of objects initially located at waist level**; the ability to occasionally lift objects initially located below the waist; no more than occasional reaching above shoulder level with the upper extremities; no climbing of steps, ladders, ropes, or scaffolds; no more than occasional bending, stooping, crouching or squatting; no kneeling or crawling; and an inability to read or write fluently in English. (Tr. 54-55, 58.) The VE expressly testified that such an individual could perform Chhay's past relevant work as an inspector. (Tr. 58.) The VE also testified that such an individual could perform the jobs of a patcher, Dictionary of Occupational Titles ("DOT"), 723.687-010; heat sealer, DOT 559.687-014; and wooden products inspector, DOT 669.687-014.[9] (Tr. 59-60.) The VE also testified that these were not the only jobs that such an individual could perform, as there would be others. (Tr. 60.)

Given that the VE testified to the presence of a significant number of other jobs that an individual with Chhay's limitations could perform, even wrongly considering her job of inspector as past relevant work would be rendered harmless. (Tr. 16.)

***Step Five***

In another undeveloped argument, Chhay asserts that the ALJ should have proceeded to Step Five of the sequential analysis and found her disabled under Grid Rule 201.10 as of her birthday in 2010 – the date she allegedly turned fifty (50) years of age. (ECF No. 13 at 9.) This argument is also deemed waived. Moreover, the argument is meritless, as "[t]he medical-vocational guidelines are not applicable until the fifth step of the evaluation process." *Meschko v.*

---

[9] The VE also testified as to the number of jobs that existed in both the national and Ohio economies with respect to the three identified jobs. In the aggregate, there were 520,000 such jobs in the national economy, 44,000 in Ohio, and 12,500 in Northeast Ohio. (Tr. 59-60.)

*Comm'r of Soc. Sec.*, 1999 U.S. App. LEXIS 24325 (6th Cir. Ohio Sept. 28, 1999) (finding no error in the ALJ's failure to consider the medical-vocational guidelines at Step Five, because the evaluation process ceased at Step Four).

Furthermore, even if the ALJ had proceeded to Step Five, Chhay's argument is premised on the assumption that she turned fifty prior to the ALJ's decision. As discussed above, Chhay was born in 1964 according to official records, as such, she was forty-eight (48) at the time of the ALJ's decision – a "younger" person under social security regulations. At the hearing, Chhay alleged that she was actually born in 1960. (Tr. 35.) The decision does not state when Chhay was born. However, during the hearing, the ALJ expressly stated that he required some proof before he was going to find her four years older than official documents established. (Tr. 36.) Chhay points to no evidence of record that such proof was ever furnished. Therefore, based on her age in official documentation, Grid Rule 201.10 is simply inapplicable.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 17, 2014